UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

S.R., individually
and as parent and
guardian of B.H., a minor,

       Plaintiff,

v.                              Civil Action No. 15-13466

FAYETTE COUNTY BOARD OF EDUCATION
and STEVEN RICHARD (RICK) MALAY,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       Pending is the motion to dismiss filed by the Fayette County Board of Education ("the Board") on December 31, 2015.

I.   <u>Factual and procedural background</u>

A.

       B.H. is the daughter of S.R., <u>see</u> Complaint ¶ 1 ("Compl."), and was, during the relevant time period, a minor. Compl. ¶¶ 3-4.  The Board is the county agency responsible for governing the public schools in Fayette County, West Virginia. <u>Id.</u> ¶ 5.  Defendant Steven Richard Malay ("Malay") was employed by the Board as a school bus driver during the relevant period. <u>Id.</u> ¶ 6.  B.H. rode to school on the bus driven by Malay from about the sixth grade to the ninth grade.  <u>Id.</u> ¶ 9.  Currently,

1

Malay is incarcerated at the Huttonsville Correctional Center in Huttonsville, West Virginia.  Id. ¶ 6.[1]

Malay began "grooming" B.H. for sexual abuse "by making inappropriate comments about her body."  Id. ¶ 10. Malay's comments made B.H. feel "very uncomfortable," and she "verbally discouraged" Malay from speaking to her in that way. Id. ¶ 10.  Upon being rebuffed, Malay told the school principal that B.H. had spoken disrespectfully to him, whereupon the principal met with B.H. and scolded her.  Id. ¶¶ 11-12.  When B.H. told the principal that Malay had made inappropriate comments about her appearance and that she felt uncomfortable, the principal assured B.H. that he would speak with Malay about it later.  Id. ¶ 13.  Not long after, "Malay asked B.H. to sit up near the front of the bus," closer to him, id. ¶ 14, and then continued to make inappropriate, sexualizing comments to her. Id. ¶¶ 14-15.

When B.H. objected to a comment Malay made about her hair, Malay again reported B.H. to the principal.  Id. ¶ 16. The principal called B.H. and Malay into a second meeting, in which he forced B.H. to apologize to Malay, though this time he

---

[1]  Malay pleaded guilty to one count of sexual abuse (relating to abuse of B.H.) and was sentenced on September 20, 2014, to serve 10 to 20 years in prison.  Compl. ¶ 41.

also told Malay that he "had better stop" making inappropriate comments about B.H.'s appearance.  Id. ¶ 17.  Malay laughed when B.H. apologized.  Id. ¶ 18.  After the second meeting with the principal, Malay's comments became "worse and more suggestive," and he also began openly "ogling" B.H. on the bus.  Id. ¶¶ 19-20.

When B.H. was in the ninth grade and about 14 years old, Malay began telling B.H. that "they needed to meet up." Id. ¶ 21.  Malay also told B.H. that he watched her while she was in the pool in her back yard.  Id. ¶ 22.

On October 3, 2012, Malay "pulled into B.H.'s driveway and told her to start wearing lower cut shirts."  Id. ¶ 23.  The next day, he gave B.H. his cell phone number, id. ¶ 24, and the day after that, "after years of grooming [B.H.], [Malay] met B.H. at his farm, not his residence, where they engaged in sexual relations."  Id. ¶ 25.  Id. ¶ 25.

B.

S.R. initiated this four-count action on behalf of B.H. on September 25, 2015.  See Compl. ¶ 1.  The Board is not named in Count I of the complaint, wherein S.R. charges Malay with violating B.H.'s Fourteenth Amendment rights, and seeks recovery under 42 U.S.C. § 1983.  Id. ¶¶ 42-50.

3

The Board is named in the remaining three counts, as to each of which it has filed its motion to dismiss.  In Count II, S.R. charges Malay and the Board with a violation of B.H.'s rights protected both by article III, section 10, of the West Virginia state constitution (the state's Due Process Clause) and the Fourteenth Amendment to the United States Constitution.  Id. ¶¶ 51-57.  In Count III, S.R. claims that B.H. was subjected by Malay to sexual harassment in violation of the West Virginia Human Rights Act ("the HRA") and that the Board had supervisory liability for Malay's harassment.  W. Va. Code § 5-11-1; Compl. ¶¶ 58-62.  In Count IV, S.R. alleges that the Board was negligent in supervising Malay.  Compl. ¶¶ 63-67.

On December 31, 2015, the Board filed the pending motion to dismiss.  The Board contends that the West Virginia Governmental Tort Claims and Insurance Reform Act ("the GTCA"), West Virginia Code § 29-12A-1, shields it from liability with respect to Counts II and III, inasmuch as Malay's acts were intentional, not negligent, acts.  See Defs.' Mot. to Dismiss ("Bd. Mot.") ¶¶ 2, 4.  As a corollary, the Board asserts that it is immune from liability under 42 U.S.C. § 1983 for Malay's intentional acts.  Bd. Mot. ¶ 1.  S.R. explicitly states, however, that she brings no section 1983 claim against the Board, Compl. ¶ 52, but rather against Malay, id. ¶¶ 43-44.

4

With respect to Count IV, the Board asserts that S.R. fails to allege facts sufficient to sustain a claim of negligent supervision.  Id. ¶ 3.

S.R. responds that certain provisions of the GTCA eliminate the Board's immunity from Malay's actions.  See Pl. Resp. ("Resp.") 13.  S.R. further contends that she stated a claim for negligent supervision sufficient to survive dismissal. Id. 17-18.

## II.   Standard governing motions to dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted. . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds by Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir.

5

2007).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009) (same).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint. . . .'" <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also</u> <u>S.C. Dept. of Health & Envtl. Control v. Commerce and Indus. Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  Factual allegations are to be distinguished from legal conclusions, which the court need not accept as true.  <u>Iqbal</u>, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor. . . ."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

III. **Discussion**

A.   **Counts II and III -- Violation of the West**
        **Virginia Constitution and Human Rights**
                   **Act, respectively**

In Count II, S.R. alleges "a constitutional tort action" against the Board under both article III, section 10, of the West Virginia constitution and the Fourteenth Amendment to the United States Constitution.  Compl. ¶¶ 52-53.  The reference to the Fourteenth Amendment, however, is perfunctory and, as the court explains below, cannot be used to bootstrap Count II of the complaint so as to survive dismissal as to the Board.

Article III, section 10, of the West Virginia constitution provides as follows:

> No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

W. Va. Const. art. III, § 10.   In regard to this constitutional provision, the West Virginia Supreme Court of Appeals has stated that,

> [u]nless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution.

7

Syl. Pt. 2, <u>Hutchinson v. City of Huntington</u>, 198 W. Va. 139 (1996).  S.R., apparently in reference to this language, declares in the complaint that her state constitutional tort action in Count II is brought "pursuant to the common law of West Virginia[.]"  Compl. ¶ 52.

In Count III, S.R. alleges that the defendants violated unspecified provisions of the HRA, W. Va. Code § 55-1-1, <u>see</u> Compl. ¶ 59, and charges them with "liab[ility] to B.H. for sexual harassment," Compl. ¶ 59.  With respect to the Board specifically, S.R. states that, "[b]ecause [] Malay is a supervisory employee in relationship to the students who ride his school bus . . . [the] Board is liable for [] Malay's acts . . . ."  <u>Id.</u> ¶ 60.

1.

In its motion to dismiss, the Board, apparently conceding for purposes of its motion that Malay engaged in the conduct described above, nevertheless contends that the GTCA grants it immunity from liability for Malay's intentional acts. <u>See</u> Board Mem. in Supp. of Mot. to Dismiss 8-9 (hereinafter "Board Mem.").  The Board further asserts that Malay's acts were outside the scope of his employment.  <u>See id.</u> 9.  According to the Board, it cannot be held vicariously liable for its employee's intentional acts done outside the scope of his

8

employment.  S.R., in her response in opposition, although apparently conceding the intentional nature of Malay's acts, contends that the Board may be held liable for the constitutional tort on the grounds that the immunity statute is inapplicable to this action.

The GTCA is designed "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability."  W. Va. Code § 29-12A-1.  Except as provided below,

> a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function . . . .

W. Va. Code § 29-12A-4(b)(1).  The GTCA permits liability as follows:

> (c) . . . a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> . . . .
>
> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

9

> . . . .
>
> > **(5) In addition to the circumstances described in subsection (c)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code.**

W. Va. Code § 29-12A-4(c).

The West Virginia Supreme Court of Appeals has held that the GTCA makes political subdivisions immune from liability for the intentional acts of their employees. In Mallamo v. Town of Rivesville, the court, when considering whether the Town of Rivesville could be vicariously liable for a civil conspiracy claim against a police officer, stated that because "conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of [the officer]." 197 W. Va. 616, 624 (1996), modified on other grounds by Smith v. Burdette, 211 W. Va. 477 (2002); see also Zirkle v. Elkins Rd. Pub. Serv. Dist., 221 W. Va. 409, 414 (2007) ("Only claims of negligence specified in W. Va. Code, 29-12A-4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code, 29–12A-4(b)(1)."). The Mallamo holding was recently restated by this court in Gilco v. Logan County Commission, Civil Action No. 11-0032, 2012 WL 3580056, at *8 (S.D. W. Va. Aug. 17, 2012).

10

S.R. attempts to defeat the Board's claim of immunity by pointing out that Count II charges the Board with violating B.H.'s rights protected by the Fourteenth Amendment to the United States Constitution, and is therefore outside the scope of GTCA immunity pursuant to section 29-12A-18 of the West Virginia Code, which provides, in relevant part, as follows:

> This article does not apply to, and shall not be construed to apply to . . . (e) Civil claims based upon alleged violations of the constitution or statutes of the United States except that the provisions of section eleven of this article shall apply to such claims or related civil actions.[2]

Of course, S.R. specifically disclaims this action as being brought under 42 U.S.C. § 1983 as against the Board. Thus, there is no vehicle for maintaining a Fourteenth Amendment claim against the Board.

The implied private right of action for state constitutional violations was set out in Hutchinson v. City of Huntington, 198 W. Va. 139 (1996), where the court stated as follows:

> Unless barred by one of the recognized statutory, constitutional, or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person

---

[2] Section 11 provides that the state will defend its employees from suits arising under Article 12A. See W. Va. Code § 29-12A-11.

11

> rights that are protected by the Due Process Clause embodied within Article 3, [Section] 10 of the West Virginia constitution.

_Id._ at Syl. Pt. 2.  No provision is made in <u>Hutchinson</u> for an implied cause of action under West Virginia law for an alleged violation of a federal constitutional right.  Such an action exists in statutory form through 42 U.S.C. § 1983 and in decisional form against the federal government through <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

It is not enough to activate the immunity-limiting effect of section 29-12A-18(e) simply to include a reference to the Fourteenth Amendment in the middle of Count II, which clearly contemplates an action based on an alleged violation of the West Virginia constitution.  The inclusion of a reference to the Fourteenth Amendment does not transform an action under state common law into one involving the federal Constitution.  Such an action, namely, an implied private right of action in state law for violation of a provision of the federal Constitution, does not exist.  Consequently, S.R.'s argument that Count II involves a federal constitutional claim, and therefore falls outside the reach of the GTCA, is unpersuasive.

2.

12

With respect to Count III, the Board's vicarious liability for Malay's acts in violation of the HRA, S.R. asserts that, because Malay was a "supervisory employee" over the schoolchildren on his school bus, the ordinary rule against vicarious liability for employers when employees act with intent is inapplicable.  Further, S.R. argues that the immunity statute does not apply because liability is imposed "expressly" by the HRA.

The HRA is intended to prevent discriminatory practices in employment, public places, and housing within West Virginia.  <u>See</u> W. Va. Code § 5-11-2.  The HRA defines "employer," "discriminate," and "place of public accommodations" as follows:

> (d) The term "employer" means the state, or any political subdivision thereof . . . .
>
> (h) The term "discriminate" or "discrimination" means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate . . . .
>
> (j) The term "place of public accommodations" means any establishment or person, . . . including the state, or any political or civil subdivision thereof, which offers its services, goods, facilities or accommodations to the general public, but shall not include any accommodations which are in their nature private.

13

W. Va. Code § 5-11-3(d), (h), (j).  The HRA makes unlawful the following discriminatory practices pertinent to the pending motion to dismiss:

> (6) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:
>
> (A) Refuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations; . . . [and]
>
> (7) For any . . . employer . . . to:
>
> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section . . . .

W. Va. Code § 5-11-9(6)-(7).  Further, section 5-11-9 provides for a cause of action against an employer for aiding or abetting a person committing an unlawful discriminatory act.  See W. Va. Code 5-11-9; see also Conrad v. ARA Szabo, 198 W. Va. 362, 378 (1996) (citing Holstein v. Norandex, Inc., 194 W. Va. 727, 730 (1995)).

Regarding the possibility of vicarious liability under the HRA, the court begins by observing that S.R.'s conception of

14

a supervisory employee is singularly broad.  As noted, S.R.
suggests that Malay was a "supervisory employee" in the sense
that he supervised the children who rode on the bus he drove.
This is an unusual formulation of the supervisory employee
concept, and finds little support in the cases.  Without
exception, consideration of supervisory authority has arisen in
the employment context where the supervisory employee was
claimed to have committed a wrong to another, subordinate
employee.  See, e.g., Hanlon v. Chambers, 195 W. Va. 99 (1995)
(employment discrimination/harassment); Colgan Air v. Human
Rights Comm'n, 221 W. Va. 588 (2007) (same).  The court is
unable to locate, and S.R. does not provide a reference to, any
case in which the concept of supervisory liability was applied
to a person who supervised his claimed victim in the literal,
non-employment sense of the word.  The cases to which S.R. does
cite as supporting a broader sense of respondeat superior, in
turn, do not involve "supervisory" liability, or are otherwise
factually distinguishable.

        S.R.'s contentions regarding the express imposition of
vicarious liability on the Board by "another provision" of state
law in this case are likewise unpersuasive.  In particular, S.R.
claims that West Virginia Code section 5-11-9(7) expressly
imposes vicarious lability on employers who aid or abet an

employee in causing harm.  The complaint is simply devoid of any suggestion that such conduct occurred here.

There is, in short, no section of state law that expressly imposes vicarious liability, over the provisions of the immunity statute, on the Board for Malay's intentional acts. The court is thus unable to conclude that S.R. has stated a claim for relief that overcomes the immunity set forth in the GTCA on that basis.  Accordingly, both Count II and Count III of the complaint are subject to dismissal as to the Board under Rule 12(b)(6).

## B.   Count IV -- Negligent supervision

In Count IV, S.R. charges the Board with negligent supervision of defendant Malay.  In particular, S.R. alleges that "there were a number of reports, events, and incidents," all "actually known" by the Board, which "required [the] Board to take more affirmative actions to prevent what ultimately occurred in this case."  Compl.  ¶ 64.

A negligent supervision claim focuses on an employer's culpability for failing to adequately supervise an employee whom the employer knew, or should have known, posed a risk to third parties.  If the employee later commits a tort, the employer may be directly liable.  As with negligence torts generally, the

16

negligent supervision analysis centers on whether the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct.  <u>See</u> 30 C.J.S. Employer—Employee § 205 ("It is necessary to show that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, having this knowledge, failed to supervise the employee adequately, or take other action to prevent the harm." (footnotes omitted)); <u>see also</u> <u>Woods v. Town of Danville, W. Va.</u>, 712 F. Supp. 2d 502, 514-15 (S.D. W. Va. 2010) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [the Town of] Danville failed to properly supervise Jarrett and, as a result, Jarrett proximately caused injury to the plaintiffs." (citing <u>Taylor v. Cabell Huntington Hosp., Inc.</u>, 538 S.E.2d 719, 725 (W. Va. 2000))); <u>McCormick v. W. Va. Dep't of Pub. Safety</u>, 503 S.E.2d 502, 507 (W. Va. 1998) (per curiam) (dealing with the closely-related torts of negligent hiring and retention) ("'[W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have

17

reasonably foreseen the risk caused by hiring or retaining an unfit person?'" (quoting State ex rel. W. Va. State Police v. Taylor, 201 W. Va. 554, 561 n.7 (1997))).

Negligent supervision is a theory of direct liability, not respondeat superior.  See 30 C.J.S. Employer—Employee § 204 ("Like negligent hiring, negligent retention is based on the employer's act or omission, and not on respondeat superior, but the employee's underlying tort is also an essential element." (footnotes omitted)); Restatement (Second) of Agency § 213 cmt. d ("Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment.").  In West Virginia Regional Jail & Correctional Facility Authority v. A.B., 766 S.E.2d 751 (W. Va. 2014), the Supreme Court of Appeals considered a negligent training/supervision/retention claim against the Authority arising out of the alleged sexual abuse of an inmate by a corrections officer.  The court began "by observing that it [wa]s of no consequence . . . that the parties characterize[d] th[e claim] as a 'direct' claim against the [Authority.]"  Id. at 772.  Instead, it concluded that the claim was "based on vicarious liability," because no "general duty was statutorily or otherwise imposed upon the State," and "the

18

negligence alleged in the complaint [could] be traced to a particular individual(s)." Id.; see also id. at 773 ("[W]e disagree with respondent that this Court has previously held that negligent hiring, supervision, and retention claims are per se viable causes of action against the State or its agencies.").

        "Having clarified" that "[t]he training, supervision, and retention of [the offending corrections officer] unquestionably fell to some public officer(s) or employee(s) from whose alleged negligence the [inmate's] claim derives," id. at 772, the court then explained that the Authority, as a State agency, could only be vicariously liable if: (1) any negligence with respect to training, supervision, or retention was committed within the scope of an Authority employee's employment; and (2) the negligence "violated a 'clearly established' right or law with respect to [] training, supervision, or retention," id. at 773-74. See also id. at 765 ("[W]e believe that situations wherein State actors violate clearly established rights while acting within the scope of their authority and/or employment [] are reasonably borne by the State."). Here, the claimed negligent failure to supervise Malay can be traced to the unnamed school principal who spoke with B.H. and Malay about Malay's behavior. See Compl. ¶¶ 11-18.

"[W]hether an agent is acting within the scope of his employment . . . is generally a question of fact for the jury," but may be decided by the court as a matter of law when the facts are undisputed and "the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." A.B., 766 S.E.2d at 768 (internal citations and quotation marks omitted). As the supreme court of appeals has previously explained:

> [I]t may be said that an act is within the course of employment, if: (1) [i]t is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account.

Foodland v. W. Va. Dep't of Health & Human Res., 532 S.E.2d 661, 665 (W. Va. 2000) (quotation marks and citation omitted); see also A.B., 766 S.E.2d at 768-70 (collecting cases).

The court in A.B. had no occasion to decide, but seemed to assume, that simple negligence with respect to training, supervision, or retention would fall within a supervisory employee's scope of employment. See 766 S.E.2d at 774 n.29 (noting that the Authority did not argue "that any such

20

alleged negligence" would fall outside the scope of employment);
see also id. at 772 ("The training, supervision, and retention
of D.H. unquestionably fell to some public officer(s) or
employee(s), from whose alleged negligence respondent's claim
derives.").

Here, too, the allegations in the complaint strongly
suggest that the unnamed principal was, in some capacity,
Malay's supervisor.  See Compl. ¶¶ 11-18 (indicating that the
principal spoke with Malay about his inappropriate comments to
B.H.).  Surely it is within the scope of a school principal's
duties to investigate complaints of inappropriate sexual
advances by employees of the school toward its students and to
ensure that employees do not engage in sexually inappropriate
conversation or activity with schoolchildren.  See Friedrichs v.
Ballard, No. 13-0031, 2013 WL 5967036 (W. Va. 2013), at *11
(referring to the position of school principal as "a position of
trust").  Nonetheless, the precise nature of the principal's
supervisory relationship to Malay requires factual development
during discovery.

The complaint includes allegations indicating that the
unnamed principal was aware of at least some of Malay's
inappropriate and disturbing behavior toward B.H.  See, e.g.,
Compl. ¶¶ 11-18 (detailing the events that came to the attention

of the principal, namely, B.H.'s complaints that Malay was speaking to her in a way that made her uncomfortable). In particular, the complaint alleges that "[w]hen B.H. told the principal that [] Malay was making inappropriate comments to her that made her feel uncomfortable, B.H. was assured [by] the principal [that he] was going to speak with [] Malay about the comments." Id. at ¶ 13. Nothing, however, appears to have come of that private conversation. The allegations in the complaint are sufficient, when taken as true, to survive dismissal under Rule 12(b)(6) of S.R.'s negligent supervision claim against the Board.

## IV.  Conclusion

For the reasons set forth above, the court ORDERS that the motion to dismiss filed by defendant Fayette County Board of Education on December 31, 2015, be, and it hereby is, granted as to Counts II and III of the complaint. It is further ORDERED that the Board's motion be, and it hereby is, denied as to Count IV of the complaint.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

DATED:  November 21, 2016

John T. Copenhaver, Jr.
United States District Judge

22